IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PROPANE RESOURCES SUPPLY AND
MARKETING, L.L.C.,

    Plaintiff,

vs.                                Case No. 12-2758-JTM

G.J. CREEL & SONS, INC., *et al.*,

    Defendants.

MEMORANDUM AND ORDER

This matter is before the court on motions to dismiss by defendants Randy Beverly and Coastal Energy for lack of personal jurisdiction. Coastal Energy argues that it committed no actions in Kansas nor communicated with any person in Kansas and so cannot be subject to personal jurisdiction here. In addition, it contends that venue is inappropriate in Kansas.

Defendant Beverly similarly contends that the court has no personal jurisdiction. "[A]ssuming PRSM meets the minimum threshold for personal jurisdiction" under K.S.A. 60-308(b)(1)(B) with its broad construction of "a tortious act in this state," he contends that jurisdiction in Kansas would violate due process, as PRSM "does not allege any act or transaction by Beverly in Kansas." (Dkt. 15 at 7). He also joins Coastal in its venue

argument. Finally, in the alternative, Beverly has also moved to dismiss the tort claims advanced against him, arguing that the absence of specific allegations against him is fatal to PRSM's claims of unjust enrichment, tortious interference, fraud, and conspiracy.

At this stage of the action, the court accepts as true all well-pled allegations in PRSM's Complaint. According to that Complaint, from August, 2006 to March, 2009, PRSM sold propane to defendant Creel Oil and Gas, Inc.[1] When Creel Oil failed to pay it $242,158.55 in 2009, PRSM brought suit in the District Court of Johnson County, Kansas. The parties entered into a March, 2010 Settlement Agreement under which Creel Oil and G.J. Creel, Inc. agreed to sign and deliver to PRSM a promissory note, payable jointly and severally, in the principal amount of $60,000. PRSM dismissed the action. Creel Oil never provided any promissory note; G.J. Creel supplied a note, but failed to make the required payments.

In May 2012, Benjamin Creel contacted Mark Bailey of PRSM in Kansas and stated that his plans to sell the propane operations of Creel Oil and G.J. Creel to a third party had fallen through. Bailey told Creel that PRSM would be interested in buying the propane operations. Bailey, Creel (on behalf of himself individually and Creel Oil and G.J. Creel), and Luke Barefoot agreed that the parties would enter into an exclusive dealing agreement, and not entertain any offers from third parties.

---

[1] Creel and its associated entities G.J. Creel & Sons, Inc., G. J. Creel, Inc., Creel Investments, Inc., and Buckville Farms, Inc., are South Carolina corporations, with a principal place of business in Conway, South Carolina. Defendant Benjamin Creel is an agent or officer in each of the Creel entities.

PRSM expended time and money in its due diligence towards the purchase. Defendant Beverly (Benjamin Creel's uncle) stated that as a condition to the purchase, he wanted to move the bulk propane operations to increase the value of his adjacent land, and proposed exchanging the site of the operations for other land owned by him.

In June 2012, Barefoot met with Marty Lerum of PRSM to examine the real estate at issue in the sale. Around the same time, Barefoot had become aware that Benjamin Creel was not thinking very clearly. On June 18, 2012, Barefoot confirmed the terms of PRSM's purchase.

On June 26, 2012, Bailey told Barefoot that PRSM would draft a Letter of Intent outlining the terms of the deal. On July 9, 2012, he sent the letter of intent, which confirmed the parties' exclusive dealing provision. Barefoot told PRSM to proceed directly to draft a Contract for Purchase and skip the Letter of Intent.

On July 31, 2012, Barefoot told Bailey of PRSM that Benjamin Creel had hired an attorney to represent him in the propane purchase. The next day, Barefoot privately told the attorney that he would personally be relaying all information to Benjamin Creel.

PRSM, with the permission of the defendants, planned to occupy the former offices of Benjamin Creel in Conway. On August 24, 2012, Bailey asked where the parties were on the purchase agreement. Between then and September 10, 2012, PRSM's attorney sent Creel's attorney a copy of the drafted purchase agreement. On September 10, Bailey asked Barefoot for the promised purchase contracts.

Defendants then told Bailey that Benjamin Creel had sold the propane operations

to Coastal Energy.

The Complaint raises four contract claims against various defendants, for (Count 1) breach of contract against Creel Oil and Coastal Energy, based upon the failure to pay for the propane delivered in 2006 through 2009; (Count 2) breach of contract against Benjamin Creel, Creel Oil, G.J. Creel, and Coastal Energy, for breaching the terms of the 2010 Promissory Note; (Count 3) equitable relief and quatum meruit against all defendants; (Count 4) action on account against Creel Oil and Coastal Energy, based on the prior deliveries of propane. In addition, the Complaint raises four tort claims against all defendants. These include (Count 5) tortious interference with contract, (Count 6) tortious interference with business expectancy, (Count 7) fraudulent misrepresentations, and (Count 8) civil conspiracy.

As defendant Coastal Energy notes, many of the allegations in the Complaint refer to the "Defendants" in general and unspecified ways. However, while the Complaint does advance most of its allegations against the Creel Entities and their agents, it is not wholly devoid of specifics as to Coastal Energy. Thus the Complaint repeatedly alleges that Coastal purchased the Creel propane operations (Compl. at ¶¶ 60, 61, 83, 93, 116), and that "Coastal Energy, as a successor in interest to Creel Oil, is liable for the debt to PRSM." (*Id.* at ¶¶ 84, 94, 117). The Complaint alleges that Beverly is not only Benjamin Creel's uncle, but that he "is in business and owns business with persons who have a beneficial interest in Coastal Energy." (*Id.* at 24). The Complaint alleges that Beverly and Coastal "had knowledge of the exclusive dealing provision and used information prepared pursuant to

4

it to their advantage," and that Coastal bought the propane operations but "failed to pay them and/or structured the purchase so as to avoid the payment of PRSM's contracts." (*Id.* at ¶ 129(e),(g)). The Complaint alleges that "all Defendants facilitated the sale of the propane operations," and they "met and conferred and conspired with each other to arrange financing[,] avoid repaying funds owed to PRSM[,] sell the propane operations[, and] conceal the money paid and received." (*Id.* at ¶¶ 136, 146).

*Conclusions of Law*

The court finds that personal jurisdiction exists, and denies the motions of Beverly and Coastal Energy seeking to dismiss the action on that ground. The court finds that the allegations advanced in the Complaint set forth claims which may be brought in this forum under K.S.A. 60-308(b)(1)(B) for the commission of a tortious act in Kansas, and further that such an exercise of jurisdiction does not offend due process.

This court has previously summarized the due process component of personal jurisdiction in *Orion Ethanol v. Evans*, 2009 WL 2355275 (D. Kan. 2009):

> The constitutional touchstone of due process is "whether the defendant purposely established 'minimum contacts' in the forum state." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "It is critical to the due process analysis ... that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980).
>
> A plaintiff meets the minimum contacts requirement by showing that 1) the defendant purposely availed itself of the privilege of conducting

5

activities within the forum state-thereby invoking the benefits and protections of the state's laws and 2) the claims against him arise out of or relate to those contacts. *Burger King Corp.* at 472; *Application to Enforce Administrative Subpoenas Duces Tecum of S.E. C. v. Knowles*, 87 F.3d 413, 418 (10th Cir.1996). The Tenth Circuit has endorsed a three-part test to determine whether a nonresident defendant's contacts with the forum state are strong enough to justify an exercise of personal jurisdiction. *See Rambo v. American Southern Ins. Co.*, 839 F.2d 1415, 1419 n. 6 (10th Cir.1988). First, the nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum. Second, the claim must be one which arises out of or results from the defendant's forum-related activities. Finally, the quality and nature of the defendant's contacts must be such that it is reasonable, in the context of our federal system of government, to require the defendant to appear in the forum state. *Id.*; *Marcus Food Co. v. Family Foods of Tallahassee, Inc.*, 729 F.Supp. 753, 757–58 (D.Kan.1990).

The plaintiff bears the burden of establishing personal jurisdiction exists. *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011). At this stage of the litigation, "the plaintiff's burden is light," and may be satisfied by a prima facie indication of jurisdiction. *AST Sports Science, Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1056 (10th Cir.2008). "Well-pled facts, as opposed to conclusory allegations, are accepted as true if uncontroverted by the defendants' affidavits." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1508-09 (10th Cir.l995).

K.S.A. 60-308(b)(1)(B) creates long arm jurisdiction over any person who commits a tortious act in Kansas. This provision is broadly interpreted to include acts committed outside Kansas which have a injury to the plaintiff in the state. *Merriman v. Crompton Corp.*, 282 Kan. 433, 146 P.3d 162, 186 (Kan. 2006). As indicated earlier, Beverly assumes that PRSM may have stated a claim under the Kansas long-arm statute for the commission of a tortious act in Kansas, but argues due process precludes jurisdiction because of a lack of

allegations that he performed any transactions in the state. Reviewing the allegations in the Complaint, the court finds that jurisdiction exists.

The Complaint alleges that all of the defendants, including Beverly, were part of a scheme to hide assets from PRSM, lull that company into inaction, while simultaneously arranging the sale of the Creel propane operations to Coastal Energy. PRSM further alleges that Beverly knew of PRSM's interest, but disregarded it for his own profit. Mark Bailey of PRSM avers that Beverly personally communicated with him as a part of this conspiracy. Taken together, the court finds that the plaintiff's allegations include claims of conspiracy, in which Beverly took a knowing part, which had the foreseeable and indeed intended result of injury to the plaintiff in Kansas by hiding assets and otherwise effectively thwarting plaintiff from pursing its legal rights arising from the prior sale of propane, and a settlement agreement reached as a compromise of litigation commenced and concluded in Kansas.

With respect to Coastal Energy, the defendant argues that the Complaint does not separately allege that it committed an act in Kansas, and cites the declaration of one of its officers who states that the company never communicated with any one in Kansas. PRSM argues that jurisdiction is proper against Coastal Energy under K.S.A. 60-308(b)(1)(A) for the same reasons as it is against Beverly. Further, it alleges that jurisdiction over the contract claims is also proper under § 60-308(b)(1)(E) for entering into a contract to be performed in Kansas. PRSM notes in particular that Coastal Energy's motion fails to address the direct allegations in the Complaint that Coastal Energy is the successor-in-

7

interest of Creel Oil, and is responsible for that company's obligations.

In its Reply, Coastal Energy takes exception to the statement that it does not challenge the successor-in-interest theory. (Dkt. 27, at 2-4). While this may be the case, the time to have done so was in its initial brief to the court. The court will not entertain arguments made for the first time in a reply brief. *See U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 2008 WL 3077074, at *9 n. 7 (D.Kan. Aug. 4, 2008). The defendant cannot remain silent on the issue of successor-in-interest and then suddenly discuss it only in their Reply.

Even had Coastal Energy addressed the successor-in-interest argument in its original motion, the court finds that the allegations in the Complaint are sufficient, for now, to uphold continued jurisdiction in Kansas under § 60-308(b)(1)(E). Coastal argues in its Reply that the successor theory cannot stand under Kansas law, since that law provides that "[g]enerally where one corporation sells or otherwise transfers all of its assets to another corporation, the latter is not liable for the debts and liabilities of the transferor." *O'Comstock v. Great Lakes Distrib.*, 209 Kan. 306, 310, 496 P.2d 1308, 1311 (1972). But the same case explicitly observes that this general rule is subject to numerous exceptions, including "where the transaction is entered into fraudulently in order to escape liability for such debts." *Id.* This is precisely what PRSM alleges here.

The other argument advanced by Coastal Energy in its Reply as to the successor-in-interest theory advanced by PRSM is that it is too conclusory to support the exercise of jurisdiction. In three of the contract claims in the Complaint, PRSM alleges that Coastal "as a successor in interest to Creel Oil, is liable for the debt to PRSM." (Compl., at ¶¶ 84, 94,

117). However, these allegations should not read in isolation from the rest of the Complaint. The Complaint also specifically alleges that Coastal knew of PRSM's exclusive dealing arrangement, and used that information to its advantage. (*Id*. at 129g). It further specifically alleges that Coastal used its inside information to facilitate the sale of the propane operations. (*Id*. at ¶ 136). More generally, it alleges that all of the defendants were a part of a conspiracy to delay the PRSM's negotiations, hide the assets of Creel Oil, and lull PRSM into inaction while the sale to Coastal proceeded. The court finds that the allegations in the Complaint are sufficient to support jurisdiction over Coastal Energy in Kansas.

Next, the court denies defendant Beverly's motion to dismiss the tort claims against him under Fed.R.Civ.Pr. 12(b)(6). Beverly argues that the plaintiff's unjust enrichment claim is defective because it does not allege any benefit was conferred by PRSM upon him, one of the elements of the tort under Kansas law. *See J.W. Thompson Co. v. Welles Products*, 243 Kan. 503, 512, 758 P.2d 738 (1988). With respect to the claim of tortious interference with contract, he argues that the Complaint fails to contain any discrete allegations against him, and that the claim of tortious interference with business expectancy fails to allege another essential element of the tort – that but for the defendant's conduct, PRSM would have achieved its expectancy. *See Lloyd v. Quorum Health Resources*, 31 Kan. App.2d 943, 954-955, 77 P.3d 993, 1002 (Kan.App. 2003). Finally, he contends that PRSM's fraud claim is not pled with particularity, and that because the conspiracy claim is predicated on fraud, that claim is defective as well.

9

The court denies each contention. The Complaint specifically alleges that Beverly indeed profited by through PRSM's forbearance in moving against Creel Oil and through the ultimate sale of Creel Oil. (Compl. ¶ 97). It further alleges that Beverly benefitted by an increase in value to his adjacent land. (*Id*. ¶ 43). The court finds that the Complaint sufficiently alleges a claim of unjust enrichment under Kansas law.

The court finds that the Complaint advances actionable claims of tortious interference with contract and business expectancy. The Complaint alleges that the defendants knew of PRSM's rights against Creel Oil and its interest in purchasing its propane operations, but undertook to thwart that sale by hiding assets and selling the propane operations in a way that damaged PRSM.

In their Replies, the defendants argue that it is improper for the plaintiff to collectively attribute certain actions to all the defendants, citing the Tenth Circuit's recent decision in *Burnett v. Mortgage Elec. Registration Sys..*, __ F.3d __, 2013 WL 386283, *6-7 (10th Cir. 2013). *Burnett*, however, should not be read so broadly as to bar any collective reference to the defendants in a civil complaint, as that case involved a complaint distinctive for both the large number of anonymous defendants sued, and the absence of other details in the Complaint:

> These allegations are too conclusory, vague and confusing to give each defendant fair notice of what the claim is and the grounds upon which it rests. Ms. Burnett's complaint is not just deficient because it attributes actions to a large group of collective defendants," which includes fifty unknown Doe defendants in addition to MERS and Mr. Woodall, but also because it is a litany of diverse and vague alleged acts ("emails, faxes, correspondence, and/or meetings, and the like") with zero details or concrete examples. From

such broad allegations against a large and mostly anonymous group of people, this court cannot draw the reasonable inference that the defendant [Mr. Woodall] is liable for the misconduct alleged, because we cannot tell *which* defendant is alleged to have done what, nor can we tell *what* the misconduct was.

*Id.* at *7 (citations and quotations omitted, emphasis in *Burnett*).

The 35-page Complaint filed by PRSM, in contrast, cannot be said to have "zero details or concrete examples." While the Complaint includes a generic claim against some potential John Does (Compl. at ¶ 15), the remainder of the Complaint is targeted on the actions of three individual persons (Benjamin Creel, Luther Barefoot, and Randy Beverly), a series of five corporations directly owned by or associated with the Creel family, and Coastal Energy, which is also associated with Beverly (*Id*. at 24). The Complaint specifically alleges that "all Defendants" engaged in the scheme to facilitate the sale of the Creel propane operations (*id*. at ¶ 136), and details the methods by which PRSM's negotiations for the purchase of the propane operations were delayed while those operations were actually sold to Coastal Energy, and states that, in the absence of defendant's actions, it was likely that PRSM would have succeeded in its expectancy. (*Id*. at 126-27). The court finds that the Complaint adequately states a claim against the defendants for tortious interference with contract and tortious interference with business expectancy.

The court also finds that the Complaint states a claim for fraudulent misrepresentation. As this court has observed, the heightened pleading requirements of Rule 9(b)

"must be read in conjunction with the principles of Rule 8, which calls for

pleadings to be 'simple, concise, and direct.'" *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir.1997). Ultimately, in order to survive a motion to dismiss, an allegation of fraud must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir.2006). In other words, the plaintiff must set out set out the "who, what, where, and when" of the alleged fraud. *Plastic Packaging Corp. v. Sun Chemical Corp.*, 136 F.Supp.2d 1201, 1203 (D.Kan.2001) (citing *Phillips USA, Inc. v. Allflex USA, Inc.*, 1993 WL 191615 (D.Kan. May 21, 1993)).

*7240 Shawnee Mission Holding v. Memon*, No. 08-2207, 2009 WL 3185344 (D.Kan. Sept. 30, 2009).

The Complaint here satisfies these requirements. It alleges that the Creel Oil and G.J. Creel, Inc., had been become defunct corporations by the time PRSM sought to purchase these entities, but the defendants fraudulently failed to inform PRSM of this material fact. The Complaint identifies both the parties to this fraudulent scheme (all of the defendants, working together) and the general time frame it was employed (the period during which PRSM was negotiating for the purchase of Creel Oil). The court accordingly denies Beverly's motion to dismiss the fraud claim. And, as his argument against the civil conspiracy claim is wholly dependent on the contention that the fraud claim should be dismissed (see (Dkt. 15, at 12), the motion is denied as to the conspiracy claim as well.

Finally, the court rejects the defendants' arguments that venue is improper in Kansas under 28 U.S.C. § 1391. As this court has observed, 28 U.S.C. § 1441 is the governing statutory provision, and

> provides that proper venue for a removed action is "the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). The United States District Court for

12

the District of Kansas "embraces" the District Court of Johnson County, Kansas, the court in which this action was pending when defendant Booker filed his Notice of Removal. Accordingly, as clearly satisfying the language set forth in 28 U.S.C. § 1441(a), this court is the proper venue for the removed action.

*Crisp v. Rappe*, No. 98-2266-JWL, 1998 WL 709608, *2 (D. Kan. 1998) (noting further that "the utility in removal actions" of § 1391 has been "flatly renounced" in *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663 (1953)). The court finds that this court is an appropriate venue for the action.

IT IS ACCORDINGLY ORDERED this 10th day of April, 2013, that the defendants' Motions to Dismiss (Dkt. 6, 14) are hereby denied.

s/ J. Thomas Marten  
J. THOMAS MARTEN, JUDGE